IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Civil Action No. _____ |
| Plaintiff, | ) ) | COMPLAINT |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| AT&T, | ) ) ) | |
| Defendant. | ) ) | |

## NATURE OF ACTION

This is an action to redress violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), Section 102(b)(5)(A) 42 U.S.C. § 12112(b)(5)(A).

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3).

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Puerto Rico.

## PARTIES

3.  The U.S. Equal Employment Opportunity Commission ("Commission" or "EEOC") is an Agency of the United States of America charged with the administration,

interpretation and enforcement of Title I of the ADA and the ADAAA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. AT&T is a communications holding company. AT&T acquired Centennial de Puerto Rico ("Centennial") on or about January, 2010, became Centennial's successor. AT&T continued Centennial's business operations, which were to provide wireless and broadband telecommunications services to wireless telephone subscribers in the U.S., Puerto Rico and the U.S. Virgin Islands. Additionally, after AT&T acquired Centennial, the operations groups and positions relevant to this action continued to exist. AT&T also continued to employ former Centennial personnel, such as the personnel in the human resources department.

5. At all relevant times, AT&T has continuously done business in Puerto Rico, and has continuously had at least fifteen employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCEEDINGS

7. More than thirty days prior to the institution of this lawsuit, Mr. Miguel Melendez filed a charge of discrimination with the Commission alleging violations of ADA. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### Miguel Melendez's Job as Switch Technician

8. Centennial was a provider of wireless and broadband telecommunications services to wireless telephone subscribers in the U.S., Puerto Rico and the U.S. Virgin Islands.

9. AT&T acquired Centennial on or about January 2010.

10. Mr. Melendez started working as a Switch Technician for Centennial in November, 2001, when he was twenty years old. As a Switch Technician, Mr. Melendez was part of the Switch Group.

11. A Switch Technician monitors and maintains data, telephone and cellular servers for the wireless provider. This involves tasks such as, handling troubleshooting tickets assigned to the Switch Group; performing weekly backups on vendor equipment; offering technical support to the engineering department as requested; providing assistance to wireless technical support on all customer issues dealing with cellular connectivity; providing assistance to technicians in the field working on cell sites; sorting calls according to level of assistance required; responding to questions from other departments about the status of the Switch Group's work; and completing daily program status reports.

12. To complete these tasks, a Switch Technician uses a computer and the telephone. On the computer, a Switch Technician uses different computer programs and applications. A Switch Technician also uses common applications and programs such as e-mail and Microsoft Word, and also ones specific to network maintenance.

13. Mr. Melendez successfully worked as a Switch Technician from November, 2001, to November, 2008, when he completely lost vision in both eyes.

### Miguel Melendez's Disability

14. Mr. Melendez suffers from diabetes, specifically from diabetic retinopathy, which caused him to lose vision in both eyes by November, 2008.

15. In February, 2009, Mr. Melendez had an operation. He remained blind after the operation, but Mr. Melendez's doctor cleared him to return to work.

### Miguel Melendez's Request for Reasonable Accommodation

16. In February, 2009, Mr. Melendez called his supervisor, Rodolfo Guitiérrez, and told him that he wanted to return to his position as Switch Technician.

17. Mr. Melendez also told Mr. Guitiérrez that, if a return to his position as a Switch Technician was not possible, he was open to taking a different position at the company.

18. Mr. Guitiérrez told Mr. Melendez that he would get back to him and that Mr. Melendez should wait to see what would happen.

19. Mr. Guitiérrez did not ask Mr. Melendez any questions about his ability to perform the duties of a Switch Technician or the duties of any other position within AT&T.

20. Mr. Melendez never received a response to his request.

21. In March, 2009, Mr. Melendez spoke to Marta Villanueva, Human Resources Benefits Specialist, and reiterated to her his intention to return to work.

22. Ms. Villanueva did not respond to Mr. Melendez's request to return to work.

4

23. Instead, Ms. Villanueva insisted that Mr. Melendez complete a long-term disability application.

24. Ms. Villanueva did not ask Mr. Melendez any questions about his ability to perform the duties of a Switch Technician or the duties of any other position within AT&T with or without reasonable accommodation.

25. Mr. Melendez wrote to Ms. Villanueva on August 26, 2009, and sent copies to Gloria Mojica, Human Resources Director, and Ignacio Angulo, VP Operations, advising them that he never received a response to his requests for reasonable accommodation since February, 2009.

26. In response to Mr. Melendez's letter, Human Resources representatives, Angela Ramos, Director of Labor Relations, and Ms. Villanueva had a meeting with Mr. Melendez on or about November 5, 2009.

27. At the November, 2009 meeting, Mr. Melendez advised Ms. Villanueva and Ms. Ramos of the existence of a software program called JAWS ("Job Access With Speech") that would allow him to return to work as a Switch Technician.

28. JAWS is a software program that reads screen text aloud while giving audio cues that allow a blind person to "interact" with programs or applications using the keyboard.

29. JAWS is not an expensive software program; it costs approximately one thousand dollars ($1,000.00) to purchase.

30. For programs or applications not made accessible with JAWS, it may be possible to write scripts or otherwise develop work-around solutions to make the application or program accessible.

31. JAWS makes it possible for a blind person to use computer programs and applications.

32. Mr. Melendez told Ms. Villanueva and Ms. Ramos that using JAWS could allow him to use programs and applications Switch Technicians use to perform their job functions.

33. At the November, 2009 meeting, neither Ms. Villanueva nor Ms. Ramos asked Mr. Melendez any questions about his ability to perform the duties of a Switch Technician or the duties of any other position within AT&T with or without reasonable accommodation.

34. In a letter Ms. Villanueva wrote to Mr. Melendez after the meeting, she assured Mr. Melendez that "our efforts are focused on evaluating the possibility of reinstating you considering all possible aspects."

35. Mr. Melendez continued to provide AT&T with information on how JAWS could be implemented as a reasonable accommodation to permit him to perform the responsibilities of the Switch Technician position.

36. From February, 2009, through October, 2010, AT&T made representations that it was continuing to evaluate Mr. Melendez's requests for reasonable accommodation. Nonetheless, AT&T did not respond to Mr. Melendez's requests to be reinstated to his former position or into another position with or without reasonable accommodation.

37.     In October, 2010, when Mr. Melendez visited his work area, Mr. Guitiérrez told him that he "was no longer part of the Switch Group" or similar words to the same effect.

38.     On October 25, 2010, immediately upon learning that AT&T removed him from the Switch Group, Mr. Melendez filed a discrimination charge. In the Charge, he alleged that AT&T (and the predecessor company Centennial) failed to provide a reasonable accommodation and that the violation had continued from February, 2009, to October 18, 2010.

## STATEMENT OF CLAIMS

39.     Paragraphs 1 through 38 are incorporated herein.  AT&T failed to provide a reasonable accommodation to Mr. Melendez, who is a qualified individual, in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A).

40.     Paragraphs 1 through 38 are incorporated herein.  AT&T failed to engage in an interactive process in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A).

41.     Paragraphs 1 through 38 are incorporated herein.  AT&T discriminated against Mr. Melendez on the basis of his disability – blindness – in regard to his terms and conditions of employment by removing him from the Switch Group, effectively removing him from his position as Switch Technician, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a).

42.     The unlawful employment practices complained of in paragraphs 8 to 38 resulted in Mr. Melendez suffering emotional pain, mental anguish, suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary damage.

43. The unlawful employment practices complained of in paragraphs 8 to 38 were intentional and caused Mr. Melendez to lose earnings, compensation, benefits and income including, but not limited to, back-pay.

44. The unlawful employment practices complained of in paragraphs 8 to 38 were intentionally done with malice and/or reckless indifference to the federally protected rights of Mr. Melendez.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

45. Grant a permanent injunction enjoining AT&T, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in employment practices which discriminate against qualified individuals on the basis of his disability in regard to his terms and conditions of employment, including removing employees from their positions due to their disability;

46. Grant a permanent injunction enjoining AT&T, its officers, successors, assigns and all persons in active concert or participation with it, from refusing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee;

47. Grant a permanent injunction enjoining AT&T, its officers, successors, assigns and all persons in active concert or participation with it, from refusing to engage in the interactive process in good faith;

48. Order AT&T to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

49. Order Defendant to make whole Mr. Melendez by providing all affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, including but not limited to rightful place reinstatement of Miguel Melendez or awarding front pay if not feasible;

50. Order AT&T to make whole Mr. Melendez by providing compensation for past and future pecuniary loss, including appropriate back pay and benefits with prejudgment interest and all out-of-pocket expenses, in amounts to be determined at trial;

51. Order AT&T to make whole Miguel Melendez by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of in paragraphs 8 to 38 above, including emotional and physical pain, suffering and mental anguish, in amounts to be determined at trial;

52. Order AT&T to pay Miguel Melendez punitive damages for its malicious and reckless conduct, as described in paragraphs 8 to 38 above, in amounts to be determined at trial; and/or

53. Grant such other further relief as the Court deems necessary and proper in the public interest; and

54. Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 30, 2011

                        Respectfully submitted,

                        P. DAVID LOPEZ
                        General Counsel
                        JAMES L. LEE
                        Deputy General Counsel
                        GWENDOLYN YOUNG REAMS
                        Associate General Counsel
                        U.S. Equal Employment
                        Opportunity Commission
                        131 M Street, N.E.
                        Washington, D.C.  20507


                        ROBERT WEISBERG
                        Regional Attorney


                        KIMBERLY McCOY-CRUZ
                        Supervisory Trial Attorney


                        */s/ Beatriz Biscardi*
                        BEATRIZ BISCARDI
                        Trial Attorney
                        Government Attorney No.: G01215
                        U.S. Equal Employment
                        Opportunity Commission
                        Miami District Office
                        Two South Biscayne Blvd., Suite 2700
                        Miami, Florida 33131
                        Tel: 305-808-1753
                        Fax: 305-808-1835
                        beatriz.biscardi@eeoc.gov