**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**
**CIVIL ACTION NO. 3:11-CV-01964-CCC**

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**
                         **Plaintiff,**

**MIGUEL MELENDEZ-FUENTES,**
                         **Plaintiff-Intervenor,**

**v.**

**AT&T,**
                         **Defendant.**
_____/

### PLAINTIFF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION TO COMPEL DISCOVERY

Pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedures, Plaintiff, United States Equal Employment Opportunity Commission ("EEOC"), hereby moves this Court for an order directing Defendant AT&T ("AT&T") to (1) provide full and complete answers to Interrogatory Numbers 1-3, 1-4, 1-5, and 1-6 of the EEOC's First Set of Interrogatories; and (2) to produce and permit the EEOC's experts in information technology to inspect and test the accessibility functionality of computer programs and applications that a Switch Technician uses and/or used to perform his job from January 2008 to the present, with Job Access with Speech ("JAWS") screen reader computer software.

### I.    FACTUAL BACKGROUND

AT&T, one of the largest and most cutting edge providers of telecommunications services worldwide, refuses EEOC access to relevant non-privileged information to determine whether inexpensive screen-reading software called JAWS was and is a reasonable accommodation that permits a blind Switch Technician, Plaintiff-Intervenor Miguel Melendez, to perform the essential functions of his job. As demonstrated below, the information the EEOC

seeks is directly relevant to the claims and defenses at issue in this Action, and therefore is discoverable.

A.    Plaintiff-Intervenor Miguel Melendez Filed an Underlying Charge of Discrimination with EEOC Alleging that AT&T Failed to Reasonably Accommodate Him.

Mr. Melendez filed the underlying administrative Charge of Discrimination giving rise to this lawsuit on October 25, 2010.  In that Charge, Mr. Melendez alleged that AT&T failed to provide him a reasonable accommodation in violation of the American with Disabilities Act Amendments of 2008.  *See* Charge of Discrimination dated Oct. 25, 2010, Bates No. EEOC 000037, attached hereto as **Exhibit 1**.  The EEOC then initiated an investigation into allegations presented in the Charge.  As part of the investigation AT&T submitted a Statement of Position that was devoid of exhibits or any supporting documentation. *See* AT&T Statement of Position dated Nov. 12, 2010, attached hereto as **Exhibit 2**.  The EEOC investigator held a fact-finding conference with Mr. Melendez and AT&T, and then provided AT&T an opportunity to submit additional information after the fact-finding conference.  *See* Letter from EEOC to AT&T dated Feb. 10, 2011, attached hereto as **Exhibit 3**.  AT&T chose not to provide the EEOC with any other information.  *See* Letter from AT&T to EEOC dated Feb. 22, 2011, attached hereto as **Exhibit 4**.

Thereafter, on May 17, 2011, the EEOC issued a finding against AT&T.  *See* Letter from EEOC to AT&T dated May 17, 2011, attached hereto as **Exhibit 5**.  The letter provides: "Having reviewed and examined the investigation, the Commission finds that the Respondent [Centennial/AT&T] failed the [sic] engage in a good faith interactive process regarding Charging Party's request for a reasonable accommodation."  *Id.*  On June 12, 2011, AT&T informed the EEOC that it would not enter into a conciliation process.  *See* Letter from AT&T to EEOC dated June 20, 2011, attached hereto as **Exhibit 6**.  As a result, the EEOC issued a notice of failure to

conciliate on June 30, 2011.  *See* Letter from EEOC to AT&T dated June 20, 2011, attached

hereto as **Exhibit 7**.

B.      Central to This Action is Whether JAWS Is a Reasonable Accommodation That Would
        Allow Mr. Melendez to Perform the Essential Functions of the Switch Technician with
        His Impaired Vision.

On September 30, 2011, the EEOC filed a complaint against AT&T alleging violations of

the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* ("ADA"), as amended by

the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-

325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), Section

102(b)(5)(A) 42 U.S.C. §12112(b) (5)(A). *See* EEOC Complaint dated Sept. 30, 2011, Docket

Entry #1 ("Compl.").

At issue is whether Mr. Melendez is a "qualified individual" as defined in the ADA, as

amended by the ADAAA.  A "qualified individual" is one who "with or without a reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).  The ADA prohibits

discrimination against a qualified individual on the basis of his disability in regard to his terms

and conditions of employment. *Id.* § 12112(a).  Discrimination under the ADA includes "not

making reasonable accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability who is an applicant or employee, unless such covered entity

can demonstrate that the accommodation would impose an undue hardship on the operation of

the business . . . ." *Id.* § 12112(b)(5)(A). A reasonable accommodation may include "making

existing facilities used by employees readily accessible to and usable by individuals with

disabilities." *Id.* § 12111(9)(A).

The EEOC alleges that Mr. Melendez is a qualified individual because with a reasonable accommodation – in this instance the screen-reading software JAWS – he can perform the essential functions of the Switch Technician position. *See* Compl. ¶¶ 27-32, 35, 39. Mr. Melendez lost his vision because of a condition related to his diabetes. *See* Compl. ¶¶ 13-15. AT&T, and its predecessor Centennial which AT&T acquired in November 2009, knew about Mr. Melendez's condition. Mr. Melendez had successfully worked for Centennial for seven years as a Switch Technician, since the age of twenty, until 2009 when doctors determined Mr. Melendez would lose his vision. Compl. ¶ 13-15. After Mr. Melendez's doctor cleared him to return to work, Mr. Melendez immediately called his supervisor, Rodolfo Guitierrez, and told him that he wanted to return to his position as Switch Technician. *Id.* ¶¶ 17-18. This was in February 2009, and was the first of many requests Mr. Melendez made to Centennial and AT&T to accommodate him. For example, in March 2009, Mr. Melendez reiterated to Marta Villanueva, Human Resources Benefits Specialist, his intention to return to work. *Id.* ¶ 21. Then in August 2009 and October 2009 Mr. Melendez made written requests to return to work with reasonable accommodation. *See* Letter from Miguel Melendez to Martha Villanueva dated Aug. 26, 2009, attached hereto as **Exhibit 8**, along with Certified Translation; Letter from Miguel Melendez to Gloria Mojica dated Oct. 2, 2009, attached hereto as **Exhibit 9**, along with Certified Translation.

Mr. Melendez specifically advised Centennial and AT&T officials of the existence of a software program called JAWS ("Job Access with Speech") that would allow him to perform the essential functions of the Switch Technician without his sight. *See* Letter from Martha Villanueva to Miguel Melendez dated Nov. 20, 2009, attached hereto as **Exhibit 10**, along with

Certified Translation.  JAWS is an inexpensive software program ($1,000.00) that makes it possible for a blind person to use computer programs and applications. *Id.* ¶¶ 29.

For a year and eight months, from February 2009 to October 2010, Centennial and AT&T made representations that Mr. Melendez's requests for reasonable accommodation was being evaluated, but no one ever actually responded to Mr. Melendez's requests to be reinstated to his former position or into another position with a reasonable accommodation.  *Id.* ¶¶ 35-36.  Then, in October 2010, Mr. Guitierrez informed Mr. Melendez that he "was no long part of the Switch Group."  *Id.* ¶¶ 35-38.  It was after he heard this that Mr. Melendez filed a charge of discrimination with the EEOC. *Id.* ¶ 38; **Ex. 1** (Charge of Discrimination).

A central issue in this Action, therefore, is whether JAWS is and was a reasonable accommodation that allows Mr. Melendez to perform the essential functions of the job of Switch Technician.  While the EEOC asserts Mr. Melendez can perform the essential functions of the Switch Technician position using JAWS, AT&T denies that JAWS makes it possible for a blind person to use computer programs and applications.  *See* AT&T Answer & Affirmative Defenses dated Feb. 29, 2012, Docket Entry #18 ("Answer & Aff. Def.") ¶ 31 (Answer).   AT&T alleges that Mr. Melendez is not a qualified individual and that he "is unable to perform the essential functions of the Switch Technician position." *Id.* ¶¶ 7-8 (Aff. Def.).

AT&T produced an expert report dated January 4, 2011, on which it intends to rely, in which its expert, having tested AT&T's computer programs and applications in place **prior to 2012**, concludes that "[m]ost of the computer-related tools used at the Hato Rey Hub [where Mr. Melendez worked] can be made both accessible and efficient through combination of JAWS scripting and training. . . ."  MJT Engineering Services—Rehabilitation Technology Summary dated Jan. 4, 2011, attached hereto as **Exhibit 11**.  AT&T's expert goes on to state that "[w]hile

it may be possible for a blind person to perform a certain task, it may be impractical due to the excessive amount of time that it would take the relative sighted co-worker." Once AT&T provides relevant information and grants access to its systems, EEOC's information technology expert will also perform and analysis of AT&T's programs and applications to determine whether JAWS is a reasonable accommodation for Mr. Melendez.[1]  In order to resolve this issue of whether JAWS is and was a reasonable accommodation that allows Mr. Melendez to perform the essential functions of the job of Switch Technician, AT&T must produce information it has in its possession about the programs and applications a Switch Technician uses to perform his job.  AT&T must provide this information to cover period from January 2008, the year when Mr. Melendez first requested to return to work with a reasonable accommodation, to the present. AT&T must also permit EEOC's expert access to analyze the programs and applications a Switch Technician uses to perform his job.

C.    The EEOC Propounds Discovery Requests to Obtain Information Relevant to Claims and Defenses in this Action, but AT&T Provides Deficient Responses.

On May 4, 2012, the EEOC served its First Set of Interrogatories and First Request for Production of Documents upon Defendant AT&T. *See* EEOC's First Request for Production of Documents, attached hereto as **Exhibit 12**; EEOC's First Set of Interrogatories, attached hereto as **Exhibit 13**.  On May 7, 2012, the EEOC also propounded a Second Request for Production for Inspection and Testing.  EEOC's Second Request for Production for Inspection and Testing, attached hereto as **Exhibit 14**.  Interrogatory numbers 1-3 thru 1-6, read as follows:

**Interrogatory No. 1-3.** List the programs and applications that a Switch Technician currently uses to perform his job. For each program and application listed, provide the

---

[1]. Pending this Court's ruling on EEOC's Motion for an Extension of Time to Serve its Expert Report (Docket Entry #29), EEOC has served a preliminary expert report upon AT&T which identifies those areas in which EEOC's Expert anticipates offering an expert opinion.

following: i.Describe the functions and/or purpose for each program and application as used by the Switch Technician; ii.Developer and maker of program and/or application; iii.Version numbers of each of program and/or application used during the period January 1, 2008 through the date of your response to this Request; iv.Dates of installation for each version; v.Location of where each application and program are installed; vi.Indicate whether or not the program and/or application can be accessed remotely off site using the Internet; vii.Identify all programs and applications that are web-based; viii.If the program and/or application was customized or altered, describe all changes, the date of the change and the reason for the customization of the program and/or application; ix.Name of Training Manual and date of publication for each program and application and version number; x.Provide a completed Section 508 Voluntary Product Accessibility Template for each program and application; xi.Identify the person who installed the program and/or applications; and xii.Identify the personnel responsible for technical support and maintenance of programs and applications in good working order.

**Interrogatory No. 1-4.** List the programs and applications that a Switch Technician used in February 2009 to perform his job. For each program and application listed, provide the following: i.Describe the functions and/or purpose for each program and application as used by the Switch Technician; ii.Developer and maker of program and/or application; iii.Version numbers of each of program and/or application used during the period January 1, 2008 through the date of your response to this Request; iv.If the program and/or application was customized or altered, describe all changes, the date of the change and the reason for the customization of the program and/or application; and v.Name of Training Manual and date of publication for each program and application and version number.

**Interrogatory No. 1-5.** In Answers to Complaint Defendant Paragraph 28, Defendant answers: "JAWS is not compatible with all programs and applications." Identify the programs and applications that are not compatible with JAWS that Defendant identified in response to Request No. 1-3 are the programs and applications that a Switch Technician currently uses to perform his job. Provide the version number of JAWS used to determine this compatibility issue.

**Interrogatory No. 1-6.** In Answers to Complaint Defendant Paragraph 28, Defendant answers: "JAWS is not compatible with all programs and applications." Identify the programs and applications that are not compatible with JAWS that Defendant identified in response to Request No. 1-4 are the programs and applications that a Switch Technician used in February 2009 to perform his job. Provide the version number of JAWS used to determine this compatibility issue.

**Ex. 13**. AT&T provided its responses and objections to these and other interrogatories following a brief extension of time, on June 5, 2012. AT&T Answers to EEOC's First Set of Interrogatories, attached hereto as **Exhibit 15**. AT&T's sole objection to these interrogatories is

based on the contention that the EEOC was "seek[ing] evidence the EEOC should have gathered in complying with its investigative pre-litigation obligations under the ADA. The EEOC failed to investigate Melendez's administrative charge." *Id*.

On May 7, 2012, the EEOC propounded a Rule 34 Second Request for Production for Inspection and Testing which asked AT&T to:

> "[p]roduce and permit the Commission's experts in information technology to inspect and test the accessibility functionality of the following computer programs and applications, which are in the possession and control of Defendants, with Job Access with Speech (JAWS) screen reader computer software: programs and applications that a Switch Technician uses and/or used to perform his job from January 2008 to the present."

**Ex. 14**. After failing to serve a timely response, AT&T finally responded on June 19, 2012, objecting on the basis that the EEOC was seeking ". . . an inspection the EEOC should have conducted as part of its pre-suit investigative obligations corresponding to the administrative charge presented by Mr. Miguel Melendez Fuentes on October 21, 2010 . . .." AT&T's Answers to the Second Request for Production for Inspection and Testing, attached hereto as **Exhibit 16**. AT&T also unilaterally decided that "it is not possible to conduct a fair and accurate assessment of the compatibility of any assistive software or technology in any network or platform other than the one AT&T currently operates." *Id.*

At the Parties' June 29, 2012, discovery conference, AT&T reiterated its objections to Interrogatory numbers 1-3 thru 1-6 and to Second Request for Production for Inspection and Testing.[2] EEOC E-mail to AT&T dated June 29, 2012, attached hereto as **Exhibit 17**. Then, on July 6, 2012, AT&T again stated: "AT&T is objecting the EEOC's discovery of Defendant's

---

[2.] At the June 29, 2012, discovery conference AT&T represented that, while it had asserted this same objection for EEOC Document Request numbers 1-10 to 1-14, 1-16 to 1-19 and 1-21, it had not actually withheld information responsive to these requests, but rather produced information subject to the objection. *See* **Ex. 17**. Accordingly, based on this representation, these requests in EEOC's First Request for Production of Documents, are not at issue in this motion.

networks that existed **prior to January 2012** on the basis that the EEOC did not investigate nor conciliate with good faith Charging Party's administrative claim." AT&T E-mail to EEOC dated July 6, 2012, attached hereto as **Exhibit 18** (emphasis added). Thus, despite parties' efforts to resolve these matters, discovery disputes regarding EEOC Interrogatories 1-3 through 1-6 and EEOC's Second Request for Production for Inspection and Testing remain unresolved. As set forth in detail below, AT&T's objections are baseless. The EEOC is seeking non-privileged information directly relevant to the claims and defenses in this action—namely, whether JAWS is and was a reasonable accommodation that allows Mr. Melendez to perform the essential functions of the job of Switch Technician.

## II.   <u>MEMORANDUM OF LAW</u>

As set forth below, AT&T should be overruled because they have no basis in law and are not properly raised as objections to discovery requests. AT&T should be ordered to provide complete responses to EEOC's discovery requests as they are squarely focused on relevant information tailored to prove the elements of its claims and defeat AT&T's asserted defenses.

**A.      AT&T's OBJECTIONS TO EEOC'S DISCOVERY REQUESTS BASED ON EEOC's ALLEGED FAILURE TO OBTAIN THE SAME INFORMATION DURING ITSADMINISTRATIVE INVESTIGATION SHOULD BE OVERRULED.** [*EEOC Interrogatories 1-3, 1-4, 1-5, and 1- 6; Second Request for Production – Rule 34 Inspection and Testing*]

In response to EEOC Interrogatory numbers 1-3 thru 1-6 and Second Request for Production for Inspection and Testing, Defendant AT&T objects on the sole basis that EEOC's discovery requests "seek[] evidence the EEOC should have gathered as part of its investigative pre-litigation obligations under the Americans with Disabilities Act (ADA) . . . ." **Ex. 15**; *see also* **Exs. 16-18**.

First, courts do not review the sufficiency or adequacy of EEOC's investigations. *See, e.g.*, *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 831 (7th Cir. 2005) (stating courts "have no business limiting the suit to claims that the court finds to be supported by the evidence obtained in the Commission's investigation. The existence of probable cause to sue is generally and in this instance not judicially reviewable."); *Newsome v. EEOC*, 37 F. App'x 87, *3 (5th Cir. 2002) ("[A]lthough Title VII provides that the EEOC 'shall make an investigation' of a charge filed, it does not prescribe the manner for doing so. The EEOC did investigate [Plaintiff's] charge, though not to her satisfaction. However, the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency."); *EEOC v. Keco Indus., Inc.,* 748 F.2d 1097, 1100 (6th Cir. 1984) (finding district court erred in "inquiring into the sufficiency of the Commission's investigation"); *EEOC v. Gen. Elec. Co.,* 532 F.2d 359, 370 (4th Cir. 1976) ("[The EEOC's] proceedings are not binding on the employer and they are not reviewable."); *EEOC v. Cal Psychiatric Transitions, Inc.*, 725 F. Supp. 2d 1100, 1112 (E.D. Cal. 2010) (citing *EEOC v. NCL Am., Inc.*, 536 F. Supp. 2d 1216, 1222 (D. Hawaii 2008), for rule that "an EEOC investigation—although a condition precedent to the EEOC's bringing of a lawsuit—simply requires that some investigation be made . . .."); *id.* (rejecting defendant employer's argument that EEOC should have done "more" during investigation and reasoning that "[w]hether the EEOC could or should do more is within the discretion of the EEOC.")

Secondly, to the extent that AT&T alleges that the EEOC's investigation in this case was deficient in some way, such alleged concern is "cured" by the *de novo* trial process.  *See Kremer v. Chem. Const. Corp.,* 456 U.S.  461, 474 (1982); *EEOC v. Hibbing Taconite Co.,* 266 F.R.D 260, 272-73 (D. Minn. 2009) ("Under current case law…this is not sufficient as an affirmative defense, as Courts may only review whether the investigation took place in order to determine if

the EEOC fulfilled the statutory prerequisites to suit. Whether the determination was made in error is an issue for the trial, when the EEOC must prove to a fact-finder that the discrimination alleged in fact occurred.")

Finally, the issue of whether the EEOC fulfilled the statutory prerequisites to suit under the ADA—namely, that the EEOC must conduct some investigation—is not a proper basis for objecting to a discovery request under Rule 26 of the Federal Rules of Civil Procedure.  Issues regarding fulfillment of statutory prerequisites to suit are properly raised in a motion for summary judgment or motion to dismiss.  *See, e.g.*, *Gibbs v. Family Care Center of Ind., LLC*, Case No. 09–385, 2011 WL 839666, *3-4 (N.D. Ind. Mar. 7, 2011) (rejecting defendant's "attempt to defeat the Motion to Compel by arguing the substantive merits of [plaintiff's] retaliatory discharge claims and of their own Counterclaims," and looking instead to defendant's arguments about relevance of information requested); *EEOC v. Cal Psychiatric Transitions, Inc.*, 725 F. Supp. 2d 1100 (E.D. Cal. 2010) (evaluating whether EEOC satisfied conditions precedent to filing action in context of deciding motion for summary judgment).

But, instead of filing a motion to dismiss, AT&T prefers to fend-off discovery of information relevant to EEOC's claims, while proceeding with discovery of information relevant to its defenses.  *See* **Ex. 18** (AT&T objects to "the EEOC's discovery of Defendant's networks that existed prior to January 2012 on the basis that the EEOC did not investigate nor conciliate with good faith Charging party's administrative claim," while also stating that it will seek Court intervention to obtain privileged documents from the EEOC investigative file because they are relevant to its defense that EEOC failed to conciliate in good faith).  There is no law to support AT&T's position that by merely alleging EEOC failed to conciliate in good faith, it can bar discovery of relevant, non-privileged information relevant to EEOC's claims, yet proceed with

discovery of information relevant to AT&T's defenses.  Accordingly, AT&T's objections should be overruled.

**B.    EEOC'S DISCOVERY REQUESTS SEEK RELEVANT INFORMATION ABOUT PROGRAMS AND APPLICATIONS USED BY SWITCH TECHNICIANS TO DETERMINE WHETHER JAWS IS A REASONABLE ACCOMMODATION.**
[*EEOC Interrogatories 1-3, 1-4, 1-5, and 1- 6; Second Request for Production for Inspection and Testing*]

The proper inquiry in discovery and on a motion to compel is whether the information sought is relevant to any party's claim or defense, as set forth in Rule 26(b) of the Federal Rules of Civil Procedure.  Rule 26(b) of the Federal Rule of Civil Procedure provides in relevant part:

> **(b) Discovery Scope and Limits**.  Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> **(1) In General.**  Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence . . . .

According to the Supreme Court, "relevant" for purposes of Rule 26 means "any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (discovery rules are to be broadly and liberally construed). Further, "[i]n employment discrimination cases, the discovery allowed is even more broad, because employers rarely leave a paper trial—or 'smoking gun'—attesting to a discriminatory intent, therefore disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence." *Moreno Rivera v. DHL Global Forwarding,* 272 F.R.D. 50, 54-55 (D.P.R. 2011) (internal quotes and citations omitted); *see also Vázquez–Fernández v. Cambridge College, Inc.,* 269 F.R.D. 150, 155 (D.P.R. 2000).

EEOC Interrogatory numbers 1-3, 1-4, 1-5 and 1-6 and EEOC's Second Request for Production for Inspection and Testing seek information directly relevant to claims and defenses

in this action.  Specifically, Interrogatories 1-3 and 1-4 request information about AT&T

programs and applications between January 2008 and the present.  The information is relevant to

determine whether such programs and applications were and are be accessible with JAWS from

the time period Mr. Melendez first requested a reasonable accommodation until now.  *See*

**Ex. 13**; *supra* Section I.B.  Interrogatories 1-5 and 1-6 ask for information about the JAWS

software that AT&T and/or its expert used to determine that JAWS was not compatible with all

programs and applications. *See* **Exs. 11, 13**.  This information is directly relevant to AT&T's

allegation that JAWS is not and was not compatible with all its programs and applications.  *See*

AT&T Answers & Aff. Def. ¶ 31 (Docket Entry #18).  Finally, EEOC's Second Request for

Production for Inspection and Testing simply asks to test and inspect the same systems directly

relevant to this action—those used by a Switch Technician.  *See* **Ex. 14**.

       The relevance and importance of the information EEOC requests is underscored by the

Expert Report AT&T submitted.  AT&T's Expert Report was completed after AT&T's expert

performed an assessment of AT&T programs and applications on December 12-14, 2010.  But

AT&T's Expert Report is devoid of many critical details.  For example, it does not disclose the

version of JAWS utilized during testing; it does not disclose what hardware operating systems

and their versions were used in the assessment (operating systems used in this assessment can

have accessibility features that enhance the user interface when operating JAWS); there is no

disclosure regarding the name and version of Internet browser(s) utilized in the assessment (web

browsers are known to have accessibility configuration problems); and there is no disclosure

regarding the version of the applications evaluated used in the Switch Technician position.  *See*

**Ex. 11**.  The information missing from AT&T's Expert Report is among the category of

information the EEOC is requesting in EEOC Interrogatory numbers 1-3, 1-4, 1-5 and 1-6.  *See*

**Ex. 15**.  Thus, the AT&T Expert Report puts the information requested by the EEOC more squarely at issue.

Moreover, although AT&T's expert completed the Expert Report in January 2011—before February 2011 when the EEOC gave AT&T the opportunity to submit additional information to support its position during the investigative process, and before June 2011 when the EEOC issued a notice of conciliation failure—AT&T chose not to disclose the Expert Report to the EEOC during the administrative investigation process.  *See* **Exs. 3-7, 11**.  After hiding the report, AT&T now wants to use it as evidence, but deny EEOC access to information on which the report is based.  AT&T should not be permitted to use its expert report as a sword and a shield, picking and choosing the non-privileged, relevant, discoverable information it produces about AT&T programs and applications, and about JAWS software AT&T used to determine that JAWS was not compatible with all programs and applications.  Moreover, AT&T cannot prevent EEOC's own expert from an analysis.

### III.   <u>CONCLUSION</u>

Based on the foregoing, the EEOC respectfully requests that this Court:

1. overrule AT&T's objections to EEOC Interrogatory numbers 1-3, 1-4, 1-5, and 1-6;

2. overrule AT&T's objections EEOC's Second Request for Production for Inspection and Testing;

3. direct AT&T to provide full and complete responses to EEOC Interrogatory numbers 1-3, 1-4, 1-5 and 1-6 within ten (10) days of the date of the Order;

4. direct AT&T to make all its computer systems, programs and applications available to EEOC's information technology expert within fifteen (15) days of the date of the Order;

5.  if AT&T takes the position that this information is not available for the time period prior to January 2012, EEOC respectfully requests that this Court require a fact-based explanation for the unavailability of the information as it potentially bears on tech-savvy AT&T's alteration or destruction of relevant evidence in this case; and

6.  grant any other relief the Court deems necessary.

Dated: July 11, 2012                        Respectfully submitted,

                                            /s/ Beatriz Biscardi
                                            BEATRIZ BISCARDI
                                            Trial Attorney
                                            Government Attorney No.: G01215
                                            U.S. EEOC
                                            Miami District Office
                                            Two South Biscayne Blvd., Suite 2700
                                            Miami, Florida 33131
                                            Tel: 305-808-1753
                                            Fax: 305-808-1835
                                            beatriz.biscardi@eeoc.gov

## CERTIFICATE OF SERVICE

I, Beatriz Biscardi, HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Compel Discovery was served by CM/ECF this 11 day of July 2012 to the following:

O'Neill & Borges
American International Plaza
250 Munoz Rivera Ave.
Suite 800
San Juan, PR 00918-1813

Loira M. Acosta-Baez
Acosta Baez & Gonzalez Law Firm
P.O. Box 192063
San Juan, PR 00919-2063
Email: loiraacosta@yahoo.com

Jose F. Benitez-Mier
USDC-PR No. 212507
josef@oneillborges.com
Carla Framil Ferrán
USDC-PR No. 228406
carla.framil@oneillborges.com

Ivan E. Aponte-Gonzalez
I. Aponte Law Office
418 Caguas St.
Las Cumbres
San Juan, PR 00926
Email: iaponte@mac.com

/s/ Beatriz Biscardi